708 P.2d 1328

**Joe R. HOAG, d/b/a Federal Lease Sales, Plaintiff/Appellant/Cross-Appellee,**

v.

**VALLEY NATIONAL BANK, Defendant/Appellee/Cross-Appellant.**

**No. 2 CA–CIV 5353.**

Court of Appeals of Arizona, Division 2, Department B.

Oct. 16, 1985.

Carl M. Tootle, Tucson, for plaintiff/appellant/cross-appellee.

Bilby & Shoenhair, P.C. by John P. Arnold, Tucson, for defendant/appellee/cross-appellant.

## OPINION

HATHAWAY, Presiding Judge.

Appellant raises one issue in this appeal: Was it proper for the trial court to grant summary judgment for appellee Valley National Bank (VNB)?

Appellant, a California car dealer, sold three automobiles to defendant Adair, not a party to this appeal, doing business in Tucson as Variety Auto Sales (VAS). Adair paid for the automobiles with three checks drawn on a VAS account at a branch of appellee VNB. Appellant deposited the checks in his bank and they were processed and presented to VNB for collection. The checks were returned by VNB marked insufficient funds. Appellant filed suit against VNB, Adair, VAS and others. VNB moved for summary judgment which was granted and for attorneys' fees which were denied. Appellant appeals from the granting of summary judgment and VNB cross-appeals from the denial of attorneys' fees.

Additional facts necessary to the resolution of the main issue before us follow:

1. Check # 1222 in the amount of $3,200 was presented to VNB through the check clearing system on August 23, 1982, and was returned for nonpayment due to insufficient funds on the same date. This check was never debited to the account of the drawer of the check, VAS.

2. Check # 1305 in the amount of $5,500 and check # 1306 in the amount of $5,500 were presented to VNB on August 12, 1982, and were returned for nonpayment due to insufficient funds on the same date. They were again presented on August 20, 1982, and again returned by VNB for the same reason. Both checks were debited to the account of VAS on August 20, 1982, and credited to the account on August 23, 1982.

3. On August 20, 1982, after all debits and credits had been posted to VAS' account, including the debit of checks # 1305 and # 1306, the account balance was $10,104.92.

4. On August 23, two adjustment credits each in the amount of $5,500 were made to VAS' account. Without these credits the account balance at the close of business would have been $10,104.92.

5. On August 24, a debit of $10,000 was posted to VAS' account. This same amount was credited to the account on August 25, 1982. On August 25, 1982, the account was closed with a balance of $21,091.42.

6. At all times Adair was the only signatory for VAS the VNB account card.

Appellant argues that there exists a genuine dispute as to a material fact which precludes the granting of summary judgment. Leikvold v. Valley View Community Hospital, 141 Ariz. 544, 688 P.2d 170 (1984). He argues that VNB had completed the process of posting as defined in A.R.S. § 47–4109 and therefore the checks were finally paid by VNB as defined in A.R.S. § 47–4213. Appellee argues that the checks had not been "posted" to the account of VAS and therefore A.R.S. § 47–4213 does not apply.

A.R.S. § 47–4109 (UCC § 4–109) reads:

"The 'process of posting' means the usual procedure followed by a payor bank in determining to pay an item and in recording the payment including one or more of the following or other steps as determined by the bank:

1. Verification of any signature.
2. Ascertaining that sufficient funds are available.
3. Affixing a 'paid' or other stamp.
4. Entering a charge or entry to a customer's account.
5. Correcting or reversing an entry or erroneous action with respect to the item."

Appellee, relying on *West Side Bank v. Marine National Exchange Bank*, 37 Wis.2d 661, 155 N.W.2d 587 (1968), argues that VNB never completed the process of posting because a correcting or reversing entry was made with respect to the checks. In *West Side Bank* a check that had been presented for payment to Marine by West Side was run through the computer which sorted, coded and stamped the check and charged the account of the drawer. On the next business day the check was placed in the drawer's file. Subsequently on the same day the drawer ordered payment stopped and Marine withdrew the check from its customer's file and returned it to West Side.

Marine argued that UCC § 4–109(e) allowed it to reverse any entry whether correct or erroneous and that the process of posting was not complete until the opportunity for such decision to correct or reverse had passed. The Wisconsin Supreme Court found § 4–109(3) unambiguous and accepted Marine's literal application of that section. The court held that the "process of posting" was not completed until the deadline had passed for Marine to return the check to West Side, that is midnight of the banking day after the day the check was received (the "midnight deadline" of A.R.S. § 47–4104(A)(8)). The holding of this case has been criticized. See *North Carolina National Bank v. South Carolina National Bank*, 449 F.Supp. 616 (D.S.C.1976), aff'd, 573 F.2d 1305 (4th Cir.1978), cert. den., 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978); Barkley Clark, The Law of Bank Deposits, Collections and Credit

Cards, §§ 5.7, 5.8 (Revised ed. 1981, 1985 Cumulative Supplement No. 2); White & Summers, Uniform Commercial Code §§ 16–4, 17–7 (2d ed. 1980); Malcom, Reflections on West Side Bank, A Draftsman's View, 18 Catholic University L. Review 23 (1968).

Appellant relies on a decision holding a contrary view. *H. Schultz & Sons, Inc. v. Bank of Suffolk County*, 439 F.Supp. 1137 (E.D.N.Y.1977). There, again dealing with a check that had been processed and then returned, the court held that § 4–109(e) permitted a bank to take corrective action only "in those cases where an error of some type has been made by the bank in completing its process of posting." 439 F.Supp. at 1141. The court examined examples of the official comment to § 4–109 which indicate that the process of posting is complete when the drawee bank decides to pay an item and that payment has been recorded. The court could not find, nor can we, any mention of an automatic extension of time for the drawee bank to renege on its decision to make payment. Discussion of the examples given would be unnecessary if the draftsman had intended to make the midnight deadline the only temporal measure of final payment. The court also disagreed with *West Side Bank*, in its interpretation of § 4–109(e) as being unambiguous. The court examined the words "correcting or reversing an entry or erroneous action", found six possible readings of that phrase, and concluded the "statute cannot reasonably be read as having a plain meaning ..." 439 F.Supp at 1141.

We find the reasoning of the court in *H. Schultz & Sons* persuasive. The interpretation urged by the defendant there and appellee here of § 4–109(e) would render meaningless the remaining four subsections of that section. We do not believe the legislature intended such a result.

■ Here checks # 1305 and # 1306 were debited to the account of VAS. Their return for insufficient funds was clearly

erroneous as VNB's own records show sufficient funds in VAS' account on the day they were presented. However, a conclusion as to whether the process of posting as to these checks was completed requires a factual determination of the steps, if any, beyond debiting an item to a customer's account, comprising VNB's usual procedure in processing checks. There is nothing in the record to indicate what that procedure is. The parties' disagreement as to whether the process of posting checks # 1305 and # 1306 was complete constitutes a genuine issue of fact. Consequently the trial court erred in granting summary judgment as to checks # 1305 and # 1306.

 Check # 1222 is a different matter. The record shows that this check was never debited to VAS' account. The process of posting was therefore never completed regardless of VNB's usual procedure and the provisions of A.R.S. § 47–4213 do not apply. While VNB's customer, VAS, might have a cause of action against VNB if the refusal to honor the check was in error, appellant has no such right. A.R.S. § 47–3409 states in part:

"A. A check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it."

VNB never accepted check # 1222, therefore it has no liability on it to the presenter. Appellant's action on that check must be against the drawer.

The granting of summary judgment for VNB on check # 1222 is affirmed. Summary judgment for VNB on checks # 1305 and # 1306 is reversed and remanded.

### Cross-Appeal

VNB appeals from the denial of its request for attorneys' fees. As the parties have noted, the granting of attorney's fees under A.R.S. § 12–341.01 is discretionary.

While it is the better practice for the trial court to state the reasons for the denial of such a request, in light of our resolution of the substantial issues in this case, we find no merit to VNB's request. The judgment of the trial court regarding attorney's fees is affirmed.

LIVERMORE and FERNANDEZ, JJ., concur.